**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**CHARLES CURTIS CARPENTER,**

      Plaintiff,

VERSUS

**NANCY LANDRY, in her official capacity as Secretary of State of Louisiana; SHERRI WHARTON HADSKEY, in her official capacity as Commissioner of Elections of Louisiana; ELIZABETH B. MURRILL, in her official capacity as Attorney General of Louisiana; and JEFF LANDRY, in his official capacity as Governor of Louisiana,**

      Defendants.

CIVIL ACTION NO. _____

JUDGE _____

MAGISTRATE JUDGE _____

U.S DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FILED    JUL 21 2026

    EDC

CLERK

---

<u>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND FOR PRELIMINARY**</u>
<u>**AND PERMANENT INJUNCTIVE RELIEF**</u>

    Plaintiff, Charles Curtis Carpenter, appearing in proper person (pro se), respectfully files this Verified Complaint against Defendants in their official capacities, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. §§ 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, and the Qualifications Clause and Elections Clause of Article I of the United States Constitution. Plaintiff seeks a declaratory judgment, a temporary restraining order, and preliminary and permanent injunctive relief against an unconstitutional candidate-qualification scheme that the State of Louisiana applies to candidates for the office of United States Senator who are not affiliated with the Democratic Party or the Republican Party.

2. The scheme is captured in a single juxtaposition. The State of Louisiana will sell Plaintiff the list of voters who are permitted to sign his nominating petition for $5,005.00, but it will not accept from him the $3,500.00 qualifying fee that it accepts from any Democrat or Republican seeking the very same office. The State prices the only door it leaves open to an independent above the door it holds open to the two major parties, and then locks the independent's door months before anyone can know who the major-party nominees will be.

3. Beginning with the 2026 election cycle, Louisiana abandoned the open primary it had used for congressional offices since 1978 and adopted a closed party primary system for United States Senator and certain other offices. *See* Act 1 of the 2024 First Extraordinary Session and Act 640 of the 2024 Regular Session of the Louisiana Legislature.

4. Under that scheme, a candidate affiliated with the Democratic Party or the Republican Party may qualify for United States Senator by either paying the $3,500.00 qualifying fee or filing a nominating petition. A candidate who is not affiliated with either of those two parties, including a candidate registered as "No Party," may qualify only by filing a nominating petition. The fee option is foreclosed to non-major-party candidates.

5. The disparity does not end there. A non-major-party candidate must: (a) gather 2,500 certified signatures within a compressed statutory window; (b) collect those signatures

only from registered voters who are themselves not affiliated with the Democratic or Republican parties, a pool the State deliberately contracted by ending recognition of the Independent Party of Louisiana effective August 1, 2025; (c) pay the State $5,005.00 merely to obtain the list identifying who is in that restricted pool; and (d) complete the petition and qualify on the same early deadline by which party candidates qualify for a party primary in which the non-major-party candidate does not and cannot participate.

6. The United States Constitution fixes a single, exclusive set of qualifications for the office of United States Senator and forbids the States both from supplementing those qualifications and from using their limited authority over the manner of congressional elections to favor or disfavor a class of candidates. As applied to non-major-party candidates for United States Senator, Louisiana's scheme transgresses those limits and unconstitutionally burdens the rights of Plaintiff and of the more than one in four Louisiana voters who are unaffiliated with the two major parties.

7. Plaintiff seeks a declaration that the challenged scheme is unconstitutional as applied to non-major-party candidates for United States Senator, and an injunction permitting Plaintiff to qualify for the November 3, 2026 general election for United States Senator on terms no more burdensome than those afforded to major-party candidates.

## JURISDICTION AND VENUE

8. This action arises under the Constitution and laws of the United States. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and under 42 U.S.C. § 1983.

9. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

10. This Court may award reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

11. This suit for prospective relief against state officers in their official capacities is authorized by Ex parte Young, 209 U.S. 123 (1908), and is not barred by the Eleventh Amendment.

12. Venue is proper in the Middle District of Louisiana under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and because Defendants maintain their offices and perform their official duties in Baton Rouge, East Baton Rouge Parish, which lies within this District.

## PARTIES

13. Plaintiff Charles Curtis Carpenter is forty-one years old, has been a citizen of the United States from birth, and is a lifelong Louisianian. He is a qualified, registered voter in Grant Parish, Louisiana (Precinct 7-3), registered as "No Party," residing at 19215 Highway 167, Dry Prong, Louisiana 71423. He is constitutionally eligible to serve as a United States Senator under Article I, Section 3, Clause 3 of the United States Constitution, and he intends and desires to qualify and to appear on the ballot as an independent candidate for United States Senator from Louisiana in the November 3, 2026 general election.

14. Defendant Nancy Landry is the Secretary of State of Louisiana and the State's chief election officer. She is charged with administering and enforcing the Louisiana Election

Code, including the qualification of candidates for federal office and the preparation and certification of the ballot. She is sued in her official capacity only.

15. Defendant Sherri Wharton Hadskey is the Commissioner of Elections within the Louisiana Department of State. Under the supervision of the Secretary of State, she is responsible for the conduct of elections and the administration of candidate qualifying. She is sued in her official capacity only.

16. Defendant Elizabeth B. Murrill (also known as Liz Murrill) is the Attorney General of Louisiana and the State's chief legal officer. She is charged with enforcing and defending the laws of the State of Louisiana, including the provisions of the Election Code challenged herein, and is empowered to intervene in and to direct litigation involving the State's interests. She is sued in her official capacity only.

17. Defendant Jeff Landry is the Governor of Louisiana. As the State's chief executive, he is charged by Article IV, Section 5 of the Louisiana Constitution with seeing that the laws are faithfully executed; he proposed, supported, and signed into law the closed party primary legislation challenged herein. He is sued in his official capacity only.

## STATEMENT OF FACTS

### A. Louisiana's Prior Open Primary and Its Equal Fee-or-Petition Rule.

18. For nearly five decades, Louisiana elected its members of Congress through an open, majority-vote primary in which all candidates, regardless of party, appeared on a single ballot, and any qualified elector could vote. A candidate qualified by paying a qualifying fee or, in the alternative, by filing a nominating petition. That fee-or-petition election was available to every candidate on equal terms, without regard to party affiliation.

### B. The 2024 Shift to Closed Party Primaries.

19. In 2024, the Louisiana Legislature enacted Act 1 of the First Extraordinary Session and Act 640 of the Regular Session, replacing the open primary with a closed party primary system for a defined set of offices, including United States Senator, Justice of the Louisiana Supreme Court, Public Service Commissioner, and member of the Board of Elementary and Secondary Education. The new system took effect January 1, 2026.

20. Under that system, only a political party recognized under La. R.S. 18:441(C) may conduct a party primary, and only the Democratic Party and the Republican Party presently qualify. The nominee of each such party advances from the spring primary to the general election. For 2026, the party primary for United States Senator was held on May 16, 2026, a runoff was held on June 27, 2026, and the general election is set for November 3, 2026.

21. Effective August 1, 2025, Louisiana ended its official recognition of the Independent Party, a change that affected approximately 150,000 voters. Of Louisiana's 2,971,305 registered voters, 820,040 are registered No Party (Exhibit C): more than one voter in four, before counting the additional voters registered with parties other than the Democratic and Republican parties.

### C. The Discriminatory Qualification Path for Non-Major-Party Senate Candidates.

22. Under the challenged scheme, a Democratic or Republican candidate for United States Senator may qualify by paying the $3,500.00 qualifying fee set by La. R.S. 18:464 or, in

the alternative, by filing a nominating petition. A candidate not affiliated with either party has no fee option and may qualify only by nominating petition under La. R.S. 18:465.

23. The nominating petition must bear the certified signatures of 2,500 registered voters. Signatures may be gathered no earlier than 120 days before qualifying, and the petition must be presented to the parish registrars of voters for certification approximately one month before the close of qualifying. For the 2026 cycle, signatures could be gathered no earlier than September 16, 2025, against a January 14, 2026 submission of nomination petition deadline: an effective gathering window of roughly seventeen weeks.

24. The burden is compounded by a restriction on who may sign. A non-major-party candidate may be nominated only by registered voters who are themselves not affiliated with the Democratic or Republican parties. The eligible signer pool is therefore confined to roughly one voter in four, and the State further narrowed that pool by ending recognition of the Independent Party. No comparable burden falls on a major-party candidate, who may avoid petitioning entirely by paying the fee.

25. To canvass the restricted pool, a candidate must first know who is in it. The Secretary of State sells the statewide list of registered No Party voters for $5,005.00 (Exhibit B). Before a non-major-party candidate may gather a single signature with any efficiency, the State's own price list requires him to spend 143 percent of the qualifying fee that the State forbids him to pay.

**D. The Real-World Burden of the Petition-Only Route on a Rural Candidate.**

26. Plaintiff lives in Grant Parish. More than one-third of the parish lies within Kisatchie National Forest, which suppresses its population density and is merely roughly 1,400 feet from his property line. The United States Census Bureau estimated the parish population at 22,075 as of July 1, 2025, and, according to the Congressional Research Service, 2,940 of the persons counted in the parish at the 2020 Census were inmates of the Federal Correctional Complex at Pollock, counted there under the Bureau's usual-residence rule (Exhibit D). The free population of the parish is therefore roughly 19,135. Of those, 12,954 are registered to vote as of July 1, 2026, and 3,429 are registered No Party (Exhibit C). Spread across the parish's 643 square miles of land, that is approximately five eligible petition signers per square mile.

27. The arithmetic of a solo, door-to-door canvass in such a parish is unforgiving. Not every eligible signer is home; not every eligible signer will sign. Assuming, conservatively, one obtained signature per mile driven, 2,500 signatures means 2,500 miles, which at the 2025 Internal Revenue Service mileage rate of $0.70 per mile is $1,750.00 in vehicle costs alone, before paper, printing, and certification costs. Assuming thirty minutes per obtained signature, 2,500 signatures is 1,250 hours of work. At fifty hours per week, every week, that is twenty-five weeks of full-time labor, against a statutory window of at most seventeen weeks.

28. The burden also falls unequally within the class of independents. A candidate in Baton Rouge or Alexandria can walk city blocks between eligible doors; a candidate in Grant Parish drives miles between them. The effective cost per signature rises as population density falls, so the scheme systematically prices rural citizens out of independent candidacy. Its predictable operation steers a rural, independent-minded citizen who contemplates public service toward registering as a Democrat or a Republican, because the effective economic cost of seeking office through a party primary is a small fraction

of the cost of seeking it as an independent.

**E. The Timeline the Scheme Imposed.**

29.  Worked backward, the arithmetic sets the real deadline. To complete twenty-five weeks of signature gathering before the January 14, 2026 nomination petition deadline to qualify, a solo rural independent had to resolve to run, and to begin organizing, by approximately July 23, 2025: more than fifteen months before the November 3, 2026 election, months before it was knowable who would seek the office or what the campaign would be about, and before the recognition of the Louisiana Independent Party was revoked on August 1, 2025. A Democrat or Republican, by contrast, could wait until mid-February 2026, roughly three months before the May 16, 2026 party primary, walk into the qualifying office, and write a check.

30.  Louisiana's own history refutes any suggestion that this is necessary. The last time Louisiana used closed party primaries for congressional elections, in the 2008 and 2010 cycles, an independent candidate could qualify for the general election by simply paying the qualifying fee, and could do so as late as July 9, 2010, for the November 2, 2010 general election: under four months before election day (Exhibit F). Upon information and belief, no Louisiana congressional candidate in the last fifty years has been required to commit to a race fifteen months in advance. Even the earliest chapters of the Republic reflect the opposite practice: President Washington announced his decision not to stand for reelection in September 1796, roughly two months before the 1796 election, and the first contested presidential campaign in American history occupied the weeks that followed.

**F. The Mismatched and Misleading Qualifying Deadline.**

31.  Although a non-major-party candidate for United States Senator does not appear on, and cannot participate in, the closed party primary, the scheme nonetheless requires that candidate to file the nominating petition and to qualify at the same time, and by the same deadline, as party candidates qualifying for the party primary. For 2026, that qualifying occurred in January 2026, approximately ten months before the November 3, 2026 general election in which the non-major-party candidate would actually appear, and before the identity of the major-party nominees was known.

32.  The State's official, published election information compounds the trap. For the November 3, 2026 election, the Secretary of State's guidance states that "[t]he qualifying period for all candidates is August 5-7, 2026," while disclosing only in a separate, less prominent notation that qualifying for party primary offices, which include United States Senator, "occurred in January" (Exhibit A). A reasonable, constitutionally eligible citizen who wished to run as an independent for United States Senator, and who consulted the State's own guidance, would be led to believe that he could qualify in August 2026, when in fact the window for that office had closed months earlier.

**G. Act 7 of 2026: The Same Voter, the Same Ballot, Two Different Rules.**

33.  By Act 7 of the 2026 Regular Session, the Legislature provided that, for the November 3, 2026 election, any candidate for United States Representative, regardless of party, may qualify by paying the qualifying fee or by filing a nominating petition, during the qualifying period of August 5 through 7, 2026.

34.  The same No Party voter, standing in the same qualifying office on the same August day,

may therefore qualify by fee for one chamber of the Congress but is told that, for the other chamber, on the same ballot, on the same election day, his only route closed the previous January and required a petition that no Democrat or Republican had to circulate. Nothing about the Senate seat justifies the difference; it is if anything the more prominent office, for which voter awareness is highest and the risk of frivolous candidacies lowest. The Legislature's own restoration of evenhanded, fee-or-petition qualification for the House demonstrates that such a rule is fully workable for a congressional office on this very ballot.

**H. The Design of the Scheme.**

35. Contemporaneous reporting described the closed primary legislation as the Governor's initiative to end the open primary system Louisiana had used for nearly fifty years (Exhibit E). Purpose may also be inferred from design. A legislature pursuing only neutral ends would have no reason to strip the fee option from independents alone, to confine their signer pool, to charge them $5,005.00 for the roster of eligible signers, to tie their deadline to a primary they cannot enter, or, upon later correcting these features for one chamber of Congress, to leave them in place for the other. Whatever the subjective intentions of individual officials, the objective architecture of the scheme entrenches the two major parties against competition from independent candidates and the voters who would support them.

**I. Plaintiff's Decision to Seek the Office.**

36. Plaintiff is a No Party voter of conservative convictions. For the past year he has worked with neighbors in Grant Parish on federal legislative solutions to problems facing their community, an effort that taught him that the community's largest problems are federal rather than state in nature. He did not enter 2026 intending to run for the United States Senate.

37. His decision crystallized the way independent candidacies characteristically do: in response to the campaign itself. The identity and positions of the major-party nominees were unknowable before the January 2026 qualifying deadline; they became clear only through the May 16, 2026 primary and the June 27, 2026 runoff. When Plaintiff entered his voting booth at Bentley United Pentecostal Church (Precinct 7-3 of Grant Parish) on June 27, 2026, he found that he could not in good conscience cast a vote for any candidate on his ballot for the United States Senate. He voted on the local tax propositions and undervoted the Senate race, something he had never done before. Two days later, on June 29, 2026, he wrote the Commissioner of Elections to ask for the documents to qualify as an independent (Exhibit G), and learned that the State's published August 5 through 7, 2026 qualifying period for the November 3, 2026 election did not apply to the Senate seat on that same ballot.

38. Intervening federal events after the deadline also gave Plaintiff a direct, personal stake in who represents Louisiana in the Senate. On January 21, 2026, one week after Louisiana's qualifying window for this seat closed, the President suspended visa processing for nationals of seventy-five countries, including the Russian Federation. Plaintiff's fiancee is a Russian national. That suspension has indefinitely separated them, and as matters now stand the only remaining lawful path for her immigration is an act of Congress. A citizen whose ability to marry and form a family depends on congressional action has a concrete interest in seeking a seat in that Congress, and that interest arose, and could only have

arisen, after the State had already barred the door.

39. Plaintiff is ready, willing, and able to qualify for the November 3, 2026 general election for United States Senator and to comply with any evenhanded requirement, including payment of the $3,500.00 qualifying fee or by a reasonable nominating petition applicable to major-party candidates, that the Court may permit.

## CONSTITUTIONAL AND LEGAL FRAMEWORK

40. The qualifications for United States Senator are fixed and exclusive. The States may neither add to nor subtract from them. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). A State may not accomplish indirectly, through a ballot-access regulation, what the Qualifications Clause forbids it to do directly. *Id.* at 835 (condemning measures that serve "the dual purposes of disadvantaging a particular class of candidates and evading the dictates of the Qualifications Clause").

41. A State's authority under the Elections Clause, U.S. Const. art. I, § 4, is limited. As the Supreme Court has held, "the Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Thornton*, 514 U.S. at 833-34; accord *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

42. The First and Fourteenth Amendments protect both "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Election laws that "give the two old, established parties a decided advantage over" their competitors are constitutionally suspect. *Id.* at 31-34. The associational right includes the right not to affiliate with either major party, and a State "may not choose means that unnecessarily restrict constitutionally protected liberty." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983) (quoting *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973)).

43. Ballot-access restrictions are reviewed under the balancing framework of *Anderson* and *Burdick v. Takushi*, 504 U.S. 428 (1992). A reviewing court weighs "the character and magnitude of the asserted injury" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. When a law imposes a severe burden, it "must be narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434.

44. Where a State requires independents to petition while permitting party candidates to qualify by fee, the constitutionality of the scheme turns on the actual burden, measured against the signer pool realistically available. *See Storer v. Brown*, 415 U.S. 724, 738-746 (1974) (a court must consider "the total pool from which" signatures may be drawn, and ask whether "a reasonably diligent independent candidate [could] be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot"). The State must "provide feasible means for other political parties and other candidates to appear on the general election ballot." *Id.* at 728.

45. The Supreme Court has closely scrutinized candidate filing fees and has required that a State provide reasonable alternative means of ballot access for candidates who cannot pay. *Bullock v. Carter*, 405 U.S. 134 (1972); *Lubin v. Panish*, 415 U.S. 709 (1974).

Louisiana inverts that protection: it reserves the inexpensive route for the two major parties and consigns independents alone to the costly one. And where a State's own scheme applies an evenhanded rule to one office while imposing a discriminatory rule on another, the internal inconsistency itself demonstrates the absence of tailoring. *Cf. Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).

## CLAIMS FOR RELIEF

### COUNT I

**First and Fourteenth Amendments; Ballot Access and Freedom of Association (42 U.S.C. § 1983)**

46. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

47. By foreclosing the fee option to non-major-party candidates, by confining the petition signer pool to the minority of voters unaffiliated with the two major parties, by charging $5,005.00 for the roster of eligible signers, and by tying the non-major-party candidate's qualifying deadline to a party primary in which that candidate cannot participate, the challenged scheme imposes a severe and discriminatory burden on Plaintiff's right to seek office and on the associational and voting rights of Louisiana's unaffiliated electorate.

48. The severity of the burden is not abstract; it is arithmetic, as alleged above. In a rural parish with approximately five eligible signers per square mile, the petition-only route demands roughly twenty-five weeks of full-time solo labor within a statutory window of at most seventeen weeks, at an out-of-pocket cost exceeding the qualifying fee itself before the first signature is gathered. On these facts, the answer to the question *Storer* directs courts to ask, whether a reasonably diligent independent candidate can be expected to satisfy the signature requirements, is no: only a candidate wealthy in money or in time can even attempt it, and no Democrat or Republican must attempt it at all.

49. Because the burden is severe, the scheme must be narrowly tailored to a compelling state interest. *Burdick*, 504 U.S. at 434. It is not. Any legitimate interest in orderly ballots, prevention of voter confusion, or a showing of support is fully served by evenhanded, equally applied requirements, as the Legislature itself recognized when, by Act 7 of the 2026 Regular Session, it made qualification for United States Representative available to every candidate by fee or petition regardless of party. The discriminatory features challenged here are not tailored to any such interest and instead operate to entrench the two major parties.

50. The challenged scheme therefore violates the First and Fourteenth Amendments, and Defendants' enforcement of it deprives Plaintiff of rights secured by those Amendments, actionable under 42 U.S.C. § 1983.

### COUNT II

**Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)**

51. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

52. Candidates for the single office of United States Senator are similarly situated with respect to qualification for that office. The challenged scheme treats them unequally on

the basis of party affiliation: major-party candidates may qualify by fee or petition, while non-major-party candidates may qualify only by a more burdensome petition, drawn from a restricted signer pool, on an earlier, primary-tethered deadline. The scheme likewise denies the State's unaffiliated voters an equal opportunity to place a candidate of their choosing on the general-election ballot.

53. The unequal treatment operates along three axes at once. It discriminates by party registration, between major-party and non-major-party candidates for the same office. It discriminates by geography, because the petition-only route's effective cost per signature rises as population density falls, pricing rural independents out of candidacy while leaving urban independents a comparatively feasible path. And it discriminates by legislative chamber, because under Act 7 of 2026 the same No Party voter may qualify by fee for the United States House on the same ballot, in the same August 5 through 7, 2026 window, while being denied that route for the United States Senate.

54. This unequal treatment burdens fundamental rights and discriminates against a class defined by non-affiliation with the two major parties. It cannot survive heightened scrutiny, and it fails even rational-basis review because it bears no rational relation to any legitimate interest not already served by evenhanded means. *Cf. Williams v. Rhodes*, 393 U.S. at 30-34; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).

55. The challenged scheme therefore violates the Equal Protection Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

## COUNT III

### Qualifications Clause and Elections Clause, U.S. Const. art. I, §§ 3 and 4

56. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57. The qualifications for United States Senator in Article I, Section 3, Clause 3 are exclusive, and a State may not supplement them, directly or through a ballot-access rule that operates as a de facto additional qualification. *Thornton*, 514 U.S. at 835.

58. The Elections Clause confers only the power to enact neutral procedural regulations and does not authorize a State "to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Cook v. Gralike*, 531 U.S. at 523 (quoting *Thornton*).

59. By imposing on non-major-party candidates for United States Senator a categorically harsher qualification path, petition-only, restricted in its signer pool, priced above the forbidden fee, and bound to a primary in which such candidates cannot participate, while affording major-party candidates a fee alternative for the same office, Louisiana has exceeded the bounds of permissible procedural regulation. The scheme does not regulate the manner of elections in an evenhanded way; it singles out and handicaps a class of candidates defined by non-affiliation, and as applied it operates as an impermissible additional barrier to, and qualification for, the office of United States Senator.

60. The challenged scheme therefore violates Article I, Sections 3 and 4 of the United States Constitution, and Defendants' enforcement of it injures Plaintiff and is actionable under 42 U.S.C. § 1983 and the Supremacy Clause.

## COUNT IV

**Procedural Due Process; Inadequate Notice (Fourteenth Amendment; 42 U.S.C. § 1983)**

61. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

62. The Due Process Clause of the Fourteenth Amendment requires constitutionally adequate notice and a meaningful opportunity to exercise the right to seek public office before that right is foreclosed.

63. The State's official guidance for the November 3, 2026 election represents that the qualifying period for all candidates is August 5-7, 2026, while disclosing only obscurely that qualifying for United States Senator had already closed in January 2026 (Exhibit A). That guidance is misleading and is reasonably calculated to cause an eligible citizen who wishes to run as an independent for United States Senator to miss the actual deadline.

64. As applied to Plaintiff, the scheme and the State's accompanying guidance deprived him of adequate notice and a meaningful opportunity to qualify for the office of United States Senator, in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

## NOTICE OF CONSTITUTIONAL QUESTION

65. Because this action draws into question the constitutionality of statutes of the State of Louisiana, Plaintiff will file and serve the notice required by Rule 5.1 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2403(b). The Attorney General of Louisiana, who is also named as a Defendant, may accordingly intervene as of right on behalf of the State.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Curtis Carpenter respectfully prays that this Court:

A. Declare, under 28 U.S.C. §§ 2201 and 2202, that the challenged candidate-qualification scheme, as applied to non-major-party candidates for United States Senator, including its foreclosure of the fee option, its restricted nominating-petition signer pool, and its primary-tethered qualifying deadline, violates the First and Fourteenth Amendments and Article I, Sections 3 and 4 of the United States Constitution;

B. Issue a temporary restraining order and preliminary injunction, and thereafter a permanent injunction, restraining Defendants, their officers, agents, and employees from enforcing the challenged scheme against Plaintiff and similarly situated non-major-party candidates for United States Senator;

C. Order Defendants to permit Plaintiff to qualify as an independent candidate for United States Senator in the November 3, 2026 general election on terms no more burdensome than those afforded to major-party candidates, and no more burdensome than those afforded to every candidate for United States Representative on the same ballot, including by accepting his qualification by payment of the $3,500.00 qualifying fee, during the qualifying period of August 5-7, 2026 already published by the Secretary of State for that election, or during such other window as the Court may order;

D.    Award Plaintiff his reasonable costs, and attorneys' fees to the extent permitted, under 42 U.S.C. § 1988; and

E.    Grant such other and further relief, at law or in equity, as the Court deems just and proper.

Respectfully submitted,

/s/ Charles Curtis Carpenter
Charles Curtis Carpenter
Plaintiff, Pro Se
19215 Hwy. 167
Dry Prong, Louisiana 71423
Telephone: (225) 252-6307
Email: chuckforlouisiana@gmail.com

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Charles Curtis Carpenter, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in this action, that I have read the foregoing Verified Complaint, and that the factual allegations contained in it are true and correct to the best of my knowledge, information, and belief. This verification is intended to serve as my declaration in support of Plaintiff's request for a temporary restraining order and preliminary and permanent injunctive relief.

Executed on this 21st day of July, 2026.

Charles Curtis Carpenter

## EXHIBIT LIST

Exhibit A:    Louisiana Secretary of State published election information for the November 3, 2026 election, identifying the qualifying period of August 5-7, 2026.

Exhibit B:    Louisiana Secretary of State fee schedule and invoice for the statewide list of registered No Party voters ($5,005.00).

Exhibit C:    Louisiana Secretary of State report of registered voters (statewide and Grant Parish), as of July 1, 2026.

Exhibit D:    U.S. Census Bureau population estimate for Grant Parish (July 1, 2025) and Congressional Research Service data regarding the Federal Correctional Complex, Pollock, group-quarters count at the 2020 Census.

Exhibit E:    Louisiana Illuminator, Gov. Landry, Lawmakers Disrupt How Louisiana Has Voted for Nearly 50 Years.

Exhibit F:    Louisiana Secretary of State qualifying records for the 2010 congressional election cycle, reflecting independent qualification by fee on July 9, 2010.

Exhibit G:    Plaintiff's June 29, 2026 correspondence to the Commissioner of Elections requesting qualification documents.

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a copy of the foregoing was filed with the Clerk of Court and served upon all Defendants, through the Louisiana Attorney General and the offices of the named Defendants, by the method authorized by the Federal Rules of Civil Procedure and the Local Rules of this Court.

Charles Curtis Carpenter, Pro Se
Dated: July 21st, 2026