## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

**CHARLES CURTIS CARPENTER,**

      Plaintiff,

VERSUS

**NANCY LANDRY, in her official capacity
as Secretary of State of Louisiana;
SHERRI WHARTON HADSKEY, in her
official capacity as Commissioner of
Elections of Louisiana; ELIZABETH B.
MURRILL, in her official capacity as
Attorney General of Louisiana; and
JEFF LANDRY, in his official capacity
as Governor of Louisiana,**

      Defendants.

CIVIL ACTION NO. 26-cv-791

JUDGE Shelly D. Dick

MAGISTRATE JUDGE Richard
L. Bourgeois, Jr.

U.S DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FILED    JUL 3 1 2026

CLM

CLERK

## MOTION TO REVOKE CONSENT TO MAGISTRATE JUDGE & MOTION TO VACATE ORDER OF MAGISTRATE JUDGE

Plaintiff hereby motions, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, that it had not expressly given written consent through Form AO 85 to having any portion of this case adjudicated through a Magistrate Judge. Therefore, any and all Consent to having a Magistrate Judge adjudicate this case is hereby withdrawn as it was not given by the Plaintiff in the first place. The Plaintiff motions to return adjudication of the Preliminary Injunction and Temporary Restratining Order to the Federal District Judge presiding over this case.

*Background*

Chief Judge Dick, please permit me to speak to you today from the heart. I don't want to be here, making arguments at your door to be treated like a human being rather than some white shoe attorney that has been arguing cases before your court like the professionals that they are. But, here I am. Reading Magistrate Judge Bourgeois' Order on Wednesday, I felt like a man that had just been hit in the gut with a baseball bat. I may be a legal layman, but even I know that the closest things to God on Earth are Federal Judges.

Just because I am not an attorney does not mean that I do not have friends that are attorneys. They all tell me roughly the same thing, that Motions for Temporary Restraining Orders (TROs) are usually ruled upon within 48 hours of their receipt by the Court. I filed my case on July 21st, 2026 and all of the Defendants were served by hand on the same day. I read Magistrate Judge Bourgeois' comment in the Order issued Wednesday that: "Plaintiff has contacted the undersigned's chambers numerous times with respect to his pending motions."

Is it true that I have repetitively called Magistrate Judge Bourgeois' chambers? Yes. I called his office 11 times after the 48 hour period had passed to try to understand the Administrative Procedures of the court – no one answered those calls. The first time that I was able to talk to a live human in Magistrate Judge Bourgeois' office was on Tuesday, in a call lasting 3 minutes and 9 seconds, and Wednesday, in a call lasting 7 minutes and 1 second. Therefore, reading the Judge's Order Wednesday was probably the smallest that I have felt in a long time. Judge Bourgeois' quote that: "Plaintiff asserts that he is a non-major-party candidate for the office of United States Senator" felt like a slap in the face. *I am not a non-major-party candidate for the office of United States Senator, the whe whole reason that this case was filed is that I would like to be a non-major-party candidate for the office of United States Senator.*

Just saying that sentence alone makes me grit my teeth. Your honor, I have spent the past 10 years of my life running away from a career in politics. After I served on former Governor John Bel Edwards' Transition Team for Fiscal Matters and watching voters get gaslit into supporting higher sales taxes to plug former Governor Bobby Jindal's budget hole, I swore that I would never pursue a career in politics. I am a 41-year old man on the autistic spectrum, which means that I am a giant introvert. Your honor, I am not a "Yes Man." I have repeatedly told the truth in my lifetime to my own career detriment. I've made my bones over the past few years in the financial restructuring sector – which means that I am often the man processing beef by killing everyone's sacred cows. In the service of working on legislation with Senator Cassidy's office for over the past year to conduct the most breathtaking financial restructuring of all – the financial restructuring of my whole rural impoverished parish – I have touched every single third rail in politics that you could think of without any compensation whatsoever. To top it all off, I fell in love with a Citizen of the Russian Federation that is on the spectrum, just like me. Your honor, do you think that I would have done half the things that I just named if I had been planning a career in politics? God, I hope not.

But, your honor, I am a man in love. I waited over two decades to find my soulmate. On the cornerstone of the Louisiana State Capitol, our forebears chiseled into stone and memory: "We live for those we love." Every day, I wake up to a cold empty bed because our President has suspended visa processing for the citizens of 75 countries, including that of my fiancée, the woman that said yes to marrying me – not in spite of all my flaws 22 months ago, but because of our mutual flaws as our societies see them. Every day, we learn a little bit more of each other's languages while we speak to each other on the deeper level of understanding that our shared life experiences bridge across our cultural divides. When I look into her eyes, I see all the stars in the universe and I see many of the reasons that a man needs to live. She makes me whole and I hope those eyes are the last thing that I see before I die.

I'm not just a man in love with the woman that he wants to marry. I am a man in love with my community. For more than over the past year, I have worked with members of my community to write Federal legislation to save our impoverished rural parish. Over one-third of our Parish's landmass is Kisatchie National Forest, and is thus exempt from property taxation. Excluding Kisatchie National Forest this calculation, 71% of the theoretical Net Assessed Value in Grant Parish is exempt from property taxation because it is Federal Property (specifically, the Federal Correctional Center within the

Bureau of Prisons, Pollock). For a generation, the buying power of federal to local transfers has diminished, and thus our property tax millages have had to go up to offset the receding tide of Federal dollars flowing to our Parish. This has been compounded by One Big Beautiful Bill Act Section 50301; wherein the Federal government is now cutting an extra 250,000,000 board feet of wood from our nation's National Forests every year without giving our Parish the 25% share of the timber sales that we use to fund our education system.

Your honor, President Trump and this Congress stole from our children to give tax breaks to the Epstein Class. In our Parish your honor, we don't have enough education funding to adequately fund our special education programs. We don't have enough Star Funded positions for every special needs child to get the education that it needs. The Governor's Minimum Foundation Program cuts are crippling our ability to give our children the futures that we want to have for them. If we don't fix our problems in education funding now, Mariya and I's dreams of raising children here in Grant Parish will taste like ash. Luckily, your honor, I and many of my fellow citizens have crafted the legislative mechanics to revitalize many impoverished rural communities around the state with Congressional legislation, with the Grant Parish Restoration Act providing many of the templates needed to do so. Therefore, your honor, I feel compelled to run for United States Senate even though I am going against the grain of everything within me to enter the political arena.

The United States of America is almost $40T in debt. Your honor, people like me are paying for Congress' unsustainable budget policies everyday with the inflation that we feel at the grocery store. When Congress can't agree on what to cut and decides to borrow the difference, we have to cut our grocery budgets yet again. The reason is partisanship. The Democrats say that we should swerve left to avoid the tree in the road. The Republicans say that we should swerve right to avoid the tree in the road. Every one knows that it would be far cheaper to swerve to avoid the tree, but Congress keeps racking up repair bills on the car of state hitting the tree dead on. That's how our nation is now almost $40T in debt: partisanship driven by closed primaries. With the exception of a few years, Louisiana had a "jungle" primary system that served us well in electing our Federal legislative delegation, we're even using it to elect the House of Representatives in this fall's elections. Yet, the "closed primary" system that we are and have been using to choose our next United States Senator is blatantly unconstitutional.

For this court to not grant me a TRO almost immediately is beyond my comprehension. In *Anderson v. Celebrezze, 460 U.S. (1983)*, the United States Supreme Court itself ruled unconstitutional arbitrary early deadlines for independent candidates, such as the one Louisiana put in place by Act 1 of the 2024 First Extraordinary Session and Act 640 of the 2024 Regular Session of the Louisiana Legislature. The President's Order to suspend visa processing for my fiancée came a week after the arbitary deadline that the Governor and the Louisiana Legislature promulgated to close Louisiana's primaries, in January. These facts and circumstances of states that have been tried schemes like the one in Louisiana today have been adjudicated by other United States District Courts in much of the same way, please see *Council of Alternative Political Parties v. Hooks,* 999 F. Supp. 607 (D.N.J. 1998) and *Campbell v. Hull,* 73 F. Supp. 2d 1081 (D. Ariz.). Morevoer, as you can see from the March 1, 2019 edition of "Ballot Access News" on page 5 of 6 which has been filed with this Court, early filing deadlines for

independent candidates have been ruled against in countless appellant courts around the country. So, its not for want of legal standing that you should rule for me, for the TRO, so it must be something else. The facts and precedent are clearly on my side in my Complaint.

So, let us review Magistrate Judge Bourgeois' reasoning behind not granting a TRO in the case of *Labranche v. State of Louisiana, et. al. 3:26-cv-00139 (M. D. La.)* on June 25th, 2026.

First, the Plaintiff in that case was faulted for asking for a TRO in contravention of Fed. R. Civ. P. 65(b) (1)(A)-(B). Rule 65(b)(1) provides the following with respect to the issuance of a TRO ("TRO") without notice to the defendants:

> *(1) Issuing Without Notice.* The court may issue a TRO without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Chief Judge Dick, movant will suffer irreparable injury, loss, or damage before the adverse party can be heard in opposition. I am not the person that set the Response Date to my lawsuit for August 11, 2026, while all parties to this lawsuit know that the candidate qualifying period is between August 5-7, 2026. My Constitutional rights will be irreperably injured if the Court fails to grant TRO to movant in contravention to *Anderson v. Celebrezze, 460 U.S. (1983)* and the litany of Federal Court jurisprudence underpinned by this Supreme Court precedent. Moreover, it is not the Movant's fault that Adverse Party Hadskey did not respond to his June 29th, 2026 email, in a timely fashion, or even for that matter – at all. Perhaps if she had responded then and there, I would have responded with this lawsuit earlier. It's not like I am some federal ballot access litigation specialist. Your honor, I live a very humble God-fearing life far away from anything remotely resembling federal ballot access litigation, my views were only set after the winner of the primary was known, wholly consistent with the spirit, facts, and outcome of *Anderson v. Celebrezze,* 460 U.S. (1983). It feels as if the Court is going along with the Adverse Parties' actions of stringing this case along so that the reasons for the TRO become mute because they have been adjudicated after the Candidate Qualification Period from August 5-7, 2026, on August 11, 2026. How would you feel after days of unanswered phone calls, to read that Order for getting two calls through to learn about process?

Moreover, I have put the Adverse Parties on Notice that I would be seeking a TRO. The Adverse Parties were served with copies of the requested TRO by hand on the same day the lawsuit was filed. So, that shouldn't be reason for declining the TRO either. Furthermore, I have submitted a Verified Compliant, unlike *Labranche* which also contained a sworn affidavit made pursuant to 28 U.S.C. §

1746, which was signed in front of a local attorney.

Furthermore, the Plaintiff has satisfied the requirements for preliminary injunctive relief at this time. A party seeking preliminary injunctive relief must demonstrate: (1) a substantial likelihood of success on the merits; (2) a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor, and (4) that an injunction is in the public interest. *See Texas Midstream Gas Servs., LLC v. City of Grand Prairie,* 608 F.3d 200, 206 (5th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 21 (2008)). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). The moving party must satisfy all four factors. *See Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Clark v. Prichard,* 812. F.2d 991, 993 (5th Cir. 1987) ("The party seeking [injunctive] relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted."). "The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court." See *Allied Mktg. Grp.,* 878 F.2d at 809.

Chief Judge Dick, that last sentence from the paragraph above which was taken in the matter of the *Labranche* decision to refuse his request for a TRO on June 25, 2026 should be adjudicated differently in my case. I have met the four tests indicated in the above paragraph. Moreover, your honor, the sound discretion of the Court is supposed to take into account the fact that I am a Pro Se litigant. In *Haines v. Kerner,* 404 U.S. 519 (1972) the U.S. Supreme Court found that the Pro Se litigant's civil rights must be liberally construed and cannot be dismissed unless it appears beyond reasonable doubt that he can provide no set of facts entitling him to relief. Thus, Pro Se litigants are supposed to be afforded the benefit of: 1) Liberal Construction: Courts must read pro se papers generously to try and find a valid claim, no matter how poorly written; and, 2) Inartful Pleading: Dismissal is improper if an unrepresented party might prove any set of facts supporting relief. Moreover, in *Hughes v. Rowe,* 449 U.S. 5 (1980), the Supreme Court held that Pro Se litigants should not be punished for failing to recognize subtle factual or legal deficiencies in their claims.

Per *Haines v. Kerner,* 404 U.S. 519 (1972), I am aware that the Supreme Court dictates that I still must follow standard court deadlines, evidence rules, and procedures. I am also aware that Judges are not required to act as personal lawyers or excuse total failures to comply with core rules. I viewed my phone calls in the highest spirit about learning about the administrative process. I have already learned so much. Reading that Order felt like a giant slap in the face. It's not like I am an attorney here. The Courts own rules put me at a disadvantage compared to litigants with professional representation. I have to drive five hours to file things with the Court, not to mention parking. Professionally represented litigants do not, they can E-File online through PACER. So, for me to wait over 48 hours from filing this lawsuit to call the Magistrate Judge's office; indeed, not reach anyone until after over a week has passed since filing this lawsuit – and then read that order felt like a giant statement of condescension violating the spirit of the *Haines* decision. Of course I was asking the Magistrate Judge Bourgeois'

clerk about which forms to file so I could make my life easier, wouldn't you? These Motions that you read today are a direct byproduct of that resultant perceived condescension. I am a human being and whereas the law is supposed to be unyielding, the practice of law is supposed to be human. The facts may be cold, *but Haines* recognizes that to err is human. I am a man filled with love, not a robot.

Is it true that the primary elections have already passed? Yes. Is it also true that the deadlines to become a candidate in this election have passed? Yes. Both circumstances were also true when Congressman John B. Anderson decided to run as an independent candidate for President of the United States in the five states that he had already competed in as a Republican Primary Candidate for President of the United States. The Supreme Court still held in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) that early filing deadlines such as Ohio in that case, or Louisiana's still more egregious deadlines against independent candidates, violates independent voters' First Amendment rights of Free Association and the Equal Protection Clause of the Fourteenth Amendment. I feel that you should also rule Louisiana's closed primary rules for Independent voters to qualify for the United States Senate for the same reasons and with the same remedy, allowing me to qualify for the ballot just like a Republican or Democratic candidate.

Your honor, Independents like me no longer have a home in either party. The Fifth Circuit has held that the *Purcell* principle in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) are only overcome if the following circumstances are met: "(i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024) (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring)). I hope that I have proven (i), (ii), (iii), and (iv). The remedy is simple through next Friday, allow me to qualify by paying the qualifying fee that Democratic & Republican candidates can qualify with about three months before the election that the candidate's name would appear on the ballot – the way it has been in our recent past.

Your honor, I am a humble man. I realize that, should you grant me this opportunity to talk about immigration reform, the opportunity to try to get my fiancée over here through a Private Bill, the opportunity for my community to have a choice that is more reflective of its character to become a United States Senator, you and this Court will only be doing so out of the gratuity of your own heart. I realize that allowing me this opportunity will mean me giving up the ability to ever have a private life again. Would it be so horrible for an Independent with an independent perspective to run for the position? Frequently, Independent candidates are the source of great ideas in our public debates, and I have so many great ideas that I would like to share to Louisiana that I hope to become mainstream.

On September 17, 1787, as the delegates concluded the Constitutional Convention in Philadelphia, Elizabeth Willing Powell, a prominent Philadelphia socialite asked Benjamin Franklin: "Well Doctor, what have we got, a republic or a monarchy?" Benjamin Franklin threw down the gauntlet to all of us when he said: "A Republic, if you can keep it." Your honor, I am holding my end of the bargain

dictated by Benjamin Franklin by filing this case, and you can serve to keep his word by granting the Temporary Restraining Order and Preliminary Injunction after returning those parts of the case to your wise counsel, rather than the judgment of Magistrate Judge Bourgeois. Therefore, please grant this Motion to Revoke Consent to Magistrate Judge and Motion to Vacate Decision of Magistrate Judge's Order on Scheduling Conference. Also, please grant the Temporary Restraining Order as requested ad nauseum in Plaintiff's Motion for Temporary Restraining Order.

Respectfully submitted,

Charles Curtis Carpenter
Plaintiff, pro se
19215 Highway 167
Dry Prong, Louisiana 71423
chuckforlouisiana@gmail.com

Dated: July 31, 2026