**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| CHARLES CURTIS CARPENTER,<br><br>PLAINTIFF,<br><br>v.<br><br>NANCY LANDRY, et al.,<br><br>DEFENDANTS. | Civil Action No. 3:26-cv-791<br><br>Judge: SDD - RLB |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, ALTERNATIVELY, TO STAY THE CASE UNDER *PURCELL* AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 3)**

## INTRODUCTION

Plaintiff decided in late June 2026 that he wanted to run for the United States Senate as a no-party candidate on November 3. But the qualifying period for Senate candidates closed on February 13, 2026, and the general election is 84 days away and counting. Plaintiff could have qualified for that ballot by filing a notice of candidacy and a nominating petition containing 2,500 signatures. But he took no concrete step to do so and, instead, asks this Court to order state officials to create a new qualifying period for him and to allow him onto the ballot without a nominating petition.

The Complaint should be dismissed on either jurisdictional or merits grounds. Plaintiff's belated decision to become a candidate does not establish an Article III injury, and the requested relief could not redress it in any event. Sovereign immunity independently bars the claims. On the merits, the Fifth Circuit has upheld ballot-access requirements far more demanding than Louisiana's, *Miller v. Nelson*, 116 F.4th 373 (5th Cir. 2024); the Supreme Court has rejected materially identical Equal Protection Clause and Qualifications Clause theories, *Jenness v. Fortson*, 403 U.S. 431 (1971), and *Storer v. Brown*, 415 U.S. 724, 746 n.16 (1974); and Plaintiff's procedural due process claim identifies no protected liberty or property interest, *Snowden v. Hughes*, 321 U.S. 1, 7 (1944), and in all events duplicates his *Anderson-Burdick* claim.

*Purcell* forecloses relief regardless. Plaintiff's case is nowhere near clear-cut; he sued months after the qualifying deadline; and ballots must be transmitted to overseas voters within weeks. The Court should dismiss the Complaint and deny Plaintiff's pending motions as moot or, at minimum, stay this case under *Purcell*.

## BACKGROUND

**A.** Louisiana's election for United States Senator will be held November 3, and the field is set. Both Julia Letlow, the Republican nominee, and Jamie Davis, the Democrat nominee, won a party primary. La. R.S. 18:410.7(A). And no candidate unaffiliated with a major political party qualified by nominating petition before the February 13 deadline to do so. *See* La. R.S. 18:410.8(A)–(B).[1]

The Legislature adopted this semi-closed-party-primary system in January 2024 by enacting Act 1 of the First Extraordinary Session. *See* 2024 La. Sess. Law Serv. 1st Ex. Sess. Act 1 (H.B. 17). For certain "[p]arty primary office[s]," including "senator … in the United States Congress," La. R.S. 18:2(9), (12), "political parties shall make all nominations of candidates for party primary office by direct primary elections[,]" La. R.S. 18:410.3(A). "Only candidates affiliated with a major political party may participate in the party primary election of the political party of the candidate's party affiliation." La. R.S. 18:410.2. A candidate seeking a party's nomination qualifies for the primary election by filing a notice of candidacy "accompanied either by a nominating petition or by the qualifying fee." La. R.S. 18:410.4(A). The candidate who wins the primary "qualifies for the general election as the party's nominee for the office." La. R.S. 18:410.7(A).

[1] Louisiana also held a separate qualifying period August 5–7, 2026, but that period did not apply to the United States Senate. It was the qualifying period for candidates in the November 3 fall open primary, including candidates for the United States House of Representatives. *See* 2026 La. Sess. Law Serv. Act 7, § 7(B)–(C)(1) (H.B. 842). As of August 7, qualification has closed for all candidate offices appearing on the November 3 ballot.

A candidate not affiliated with a major political party can qualify for the general election itself—without having to run in a primary election—by filing a notice of candidacy with "a nominating petition," "during the qualifying period established for the party primary election." La. R.S. 18:410.8(A). For a statewide office this cycle, the petition required signatures from "two thousand five hundred" qualified voters "from within the state" unaffiliated with a major political party. La. R.S. 18:419.2(B)(2)(c); *see* La. R.S. 18:465(C)(1) (for future elections, requiring that "not less than two hundred fifty of which shall be from each of the congressional districts"). For anyone, including those seeking signatures of qualified voters for purposes of assembling a nominating petition, the Secretary of State makes available Louisiana's voter list commercially at the "maximum cost of $5,000" with a $5 fee (which is cheaper than it would be by public records request). ECF No. 1-4; *see Voter List Frequently Asked Questions*, La. Sec'y of State, perma.cc/A389-ND4M.

**B.** Plaintiff Charles Curtis Carpenter is a Grant Parish "No Party voter of conservative convictions," unaffiliated with a major political party. ECF No. 1 (Compl.) ¶ 13. He has "never qualified to run for public office with the Louisiana Secretary of State in [his] life." ECF No. 1-9. He did not file a notice of candidacy for the November 3 election before February 13 because, he alleges, he "did not enter 2026 intending to run for the United States Senate," Compl. ¶ 36, and only decided to do so after "the May 16, 2026 primary and the June 27, 2026 runoff," ¶ 37. Two days later, Plaintiff emailed the Commissioner of Elections, admitting "to being kind of confused" and asking how to qualify to run for United States Senate. *See* ECF

No. 1-9. She informed him that "the qualifying period applicable to [his] candidacy had already closed in January 2026." ECF No. 1-3 ¶ 14. He then filed this suit against the Secretary of State, the Commissioner of Elections, the Attorney General, and the Governor, each in their official capacities ("State Defendants"). Compl. ¶¶ 14–17.

Plaintiff brings four claims under 42 U.S.C. § 1983, claiming Louisiana's ballot-access laws violate (1) the First and Fourteenth Amendment under the *Anderson-Burdick* framework,[2] ¶¶ 46–50; (2) the Equal Protection Clause, ¶¶ 51–55; (3) the Qualifications and Elections Clauses, ¶¶ 56–60; and (4) the Due Process Clause, ¶¶ 61–64. Plaintiff requests an injunction ordering Defendants to accept his qualification for the November 3 general election "by payment of the $3,500.00 qualifying fee, during the qualifying period of August 5-7, 2026 … or during such other window as the Court may order." Compl.10. Plaintiff also moved for a temporary restraining order, ECF No. 2, and for a preliminary and permanent injunction, ECF No. 3 ("PI.Mem."), requesting the same relief.

On August 4, the Magistrate Judge recommended denying the temporary restraining order. ECF No. 13. Not only did Plaintiff "fail[] to comply with Rule 65(b)(1)'s requirements," *id.* at 4, he also "failed to satisfy the requirement for preliminary injunctive relief at this time," *id.* at 5. The Magistrate Judge recognized that several "immunities will be applicable, at least in part, to Plaintiff's claims." *Id.* at 5–6 (citing *Hyers v. Landry*, No. 26-286, ECF No. 12 (E.D. La. Apr. 16, 2026), *report*

[2] "Under *Anderson/Burdick*, a law that does not place a 'severe' burden on voting rights will be upheld if it is a 'reasonable, nondiscriminatory restriction' justified by 'the State's important regulatory interests.'" *Richardson v. Scott*, 28 F.4th 450, 454 n.6 (5th Cir. 2022) (citation omitted).

*and recommendation adopted*, 2026 WL 1279080, at *2 (E.D. La.) (hereinafter "*Hyers* Order")). Nor did the Magistrate Judge find Plaintiff likely to succeed on the merits not least because "[a] candidate's appearance on a ballot is not a fundamental right." *Id.* at 6–7 (collecting cases).[3] And on the equities, Plaintiff also fell short because he decided to run for United States Senate "months after the qualification deadline set by Louisiana law." *Id.* at 7. That makes the requested equitable relief categorically "unavailable." *Id.* at 8 (collecting cases). And with the election just weeks away, the Magistrate Judge observed, the *Purcell* principle likely doubly forecloses the requested relief and would require a stay. *Id.* at 8–9 & n.5 (citing *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 407 (5th Cir. 2024)). The same reasoning applies with equal force here.

The Court should dismiss this case and deny the TRO and preliminary injunction motions as moot or, at minimum, stay the case under *Purcell*.

## STANDARD OF REVIEW

**Dismissal for Lack of Jurisdiction.** Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *e.g.*, *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). When "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Sovereign immunity is jurisdictional and properly raised under Rule 12(b)(1). *See Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023).

[3] *See Williams v. Delany*, No. 16-93-SDD-EWD, 2016 WL 4253972, at *6 (M.D. La. June 28, 2016), *report and recommendation adopted*, 2016 WL 4257050 (M.D. La. Aug. 10, 2016); *Lubin v. Panish*, 415 U.S. 709, 718–19 (1974); *Dart v. Brown*, 717 F.2d 1491, 1503 (5th Cir. 1983); *Navarro v. Neal*, 716 F.3d 425, 430 (7th Cir. 2013).

Plaintiff, as "the party asserting jurisdiction," "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**Dismissal for Failure to State a Claim.** Dismissal is also proper where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court need not accept Plaintiff's "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true; only "well-pleaded facts" receive that presumption. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citation modified). After disregarding those allegations, "well-pleaded facts" alone "must make relief plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

**Preliminary Injunction.** "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted). Plaintiff must establish "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest." *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir.

2024) (citation omitted); *see Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (failure to prove just one can be dispositive).

## ARGUMENT

### I. The Court Should Dismiss Plaintiff's Claims under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.

#### A. Plaintiff Lacks Article III Standing.

Plaintiff's case begins and ends with Article III. To satisfy Article III, a plaintiff must show (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (citation omitted). And "standing is not dispensed in gross," which means that "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Plaintiff has at least two Article III problems.

*First*, Plaintiff's absence from the November ballot follows from his own decision to seek office more than four months after the qualifying period closed. *See* Compl. ¶¶ 36–37. To have a sufficiently personal injury, a plaintiff suing over an office must be *actually* "able and ready" to run, *Carney v. Adams*, 592 U.S. 53, 64 (2020), and he "cannot manufacture standing merely by inflicting harm on [him]self," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Before the deadline[4]—and

[4] To the extent Plaintiff challenges the United States Senate qualification period itself, his injury arising from that provision would still not extend him Article III standing to challenge the other ballot-access provisions. *See California v. Texas*, 593 U.S. 659, 678 (2021).

even now—Plaintiff alleges no concrete step he has taken toward becoming a candidate. He filed no notice of candidacy, obtained no nominating petition, gathered no signatures (in Grant Parish or anywhere), presented nothing to any registrar of voters. His alleged injury arises not from any obstacle to a candidacy he was "able and ready" to pursue but from his belated decision to run.

*Second*, no federal court could redress the supposed injury anyway. On Plaintiff's telling, the Court need only "[o]rder Defendant to permit Plaintiff to qualify as an independent candidate for United States Senator in the November 3, 2026 general election." Compl.10. But "a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions"—it may not "lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (cleaned up); *accord Green Valley Special Utility Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) (en banc) ("voiding" a state law "is 'quintessentially retrospective' and thus out of bounds under [*Ex parte*] *Young*" (citation omitted)). So any injury could not be redressed by the requested relief.

**B. Plaintiff's Claims Are Also Barred by Sovereign Immunity.**

The claims against the Governor and Attorney General are also foreclosed by sovereign immunity, and *Ex parte Young* offers no refuge. "[S]overeign immunity prohibits nonconsenting states from being sued by private litigants in federal forums." *White Hat v. Murrill*, 141 F.4th 590, 599 (5th Cir. 2025). Ex parte Young is a narrow exception, and it reaches only an officer with "the particular duty to enforce" the challenged provision and "a demonstrated willingness to exercise that duty." *Id.*

at 600. A "general duty to see that the laws of the state are implemented" will not do. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022).

Plaintiff's only allegations against the Governor and the Attorney General are that each has a general duty to execute or enforce state law, Compl. ¶¶ 16–17, which are insufficient connections to trigger the *Ex parte Young* exception, *see United States v. Abbott*, 85 F.4th 328, 334–36 (5th Cir. 2023) (Governor); *White Hat*, 141 F.4th at 600 (Attorney General); *accord Hyers* Order at 3.[5] Accordingly, sovereign immunity forecloses the claims against them.

As for the Commissioner of Elections and the Secretary of State, any *Ex parte Young* theory fares no better. While the Secretary "prepare[s] forms which may be used by any person who seeks nomination as a candidate by nominating petition," La. R.S. 18:465(B), such petitions are submitted to and certified by "*the registrars of voters in the parishes where the signers reside*," not the Secretary or Commissioner. La. R.S. 18:465(E)(1)–(2) (emphasis added). And even then, *Ex parte Young* requires a "demonstrated willingness" to enforce the challenged laws through "prior or contemporaneous affirmative acts." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325, 330 (5th Cir. 2024) (citation omitted). But Plaintiff cannot allege such a willingness because he never filed qualifying papers or a nominating petition, and the Secretary therefore never rejected his candidacy, applied the challenged deadline to him, or otherwise "compel[led] or constrain[ed]" him under the challenged provisions. *Id.* at

[5] The claims against the Governor are independently foreclosed by legislative immunity. *See* ECF No. 13 (citing *Hyers*, No. 26-286, ECF No. 12 (Apr. 16, 2026), *report and recommendation adopted*, 2026 WL 1279080, at *2).

325 (citation omitted). Neither official thus has the enforcement connection *Ex parte Young* requires.

## II. The Court Should Dismiss Plaintiff's Claims under Rule 12(b)(6) for Failure to State a Claim.

Even if the Court had subject matter jurisdiction (it does not), the claims fail on their merits as a matter of law.

### A. The First and Fourteenth Amendment Ballot-Access Claim Fails (Count I).

Plaintiff's *Anderson-Burdick* claim is foreclosed by *Miller v. Nelson*, 116 F.4th 373, 379–84 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1435 (2025). There, as here (Compl. ¶¶ 47–49), plaintiffs challenged a Texas state law requiring "a statewide Minor Party or Independent candidate [to] submit valid signatures totaling 1% of all votes cast in the most recent gubernatorial election and 1% of all votes cast for president in Texas in the most recent presidential election" to obtain ballot access. *Id.* at 377, 380. That requirement called for petitioning for upward of 80,000 signatures for statewide ballot access in as few as "thirty days," *id.* at 378 n.2, and so "practically speaking," non-major-party candidates had to "hire professional petition circulators to collect an adequate number of signatures to obtain ballot access through the petitioning process," *id.* at 381.

The Fifth Circuit rejected plaintiffs' *Anderson-Burdick* claims, holding Texas's "one-percent requirement does not impose a severe burden on potential candidates." *Id.* at 380 (citing *Nader v. Connor*, 388 F.3d 137, 137–38 (5th Cir. 2004)). And it further recognized that Texas has a "legitimate state interest in 'assur[ing] itself that the candidate is a serious contender, truly independent, and with a satisfactory level

of community support,' before listing that candidate on the ballot." *Id.* at 381 (alteration in original) (quoting *Storer v. Brown*, 415 U.S. 724, 746 (1974)). So the *Anderson-Burdick* framework was plainly satisfied.

Applying *Miller*, Louisiana's far lighter requirement is *a fortiori* constitutional. Where Texas demanded one percent of a statewide electorate, Louisiana asks 2,500 signatures. La. R.S. 18:419.2(B)(2)(c). Where Texas allowed as few as thirty days after primaries ended, Louisiana permitted Plaintiff to begin collecting signatures nearly five months before qualifying opened. *See* La. R.S. 18:419.2(B)(2)(a). And where the Texas plaintiffs had to hire professional circulators to have any chance, 2,500 signatures over 120 days poses a far lesser burden. *See* Compl. ¶ 23. If the Texas scheme imposed no severe burden and served a legitimate state interest, so too does Louisiana's. Under *Miller*, 116 F.4th 373, therefore, Plaintiff's *Anderson-Burdick* claim must be dismissed.

**B. The Equal Protection Clause Claim Fails (Count II).**

Plaintiff next complains that non-major-party candidates are treated unequally in violation of the Equal Protection Clause. Compl. ¶¶ 45, 52–53 (citing *Bullock v. Carter*, 405 U.S. 134 (1972)). The Supreme Court rejected materially the same argument in *Jenness v. Fortson*, 403 U.S. 431 (1971). In upholding Georgia's laws requiring non-major-party candidates to complete nominating petitions for ballot access, the *Jenness* Court rejected the "premise that it is inherently more burdensome for a candidate to gather the signatures of 5% of the total eligible electorate than it is to win the votes of a majority in a party primary." *Id.* at 440. Accordingly, the Court could not "see how Georgia ha[d] violated the Equal Protection

Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other." *Id.* at 440–41. Louisiana likewise provides an alternative path to the general-election ballot, *see* La. R.S. 18:465, that is far less demanding than the five-percent petition requirement *Jenness* upheld. An Equal Protection problem, that is not.

### C. The Qualifications Clause and Elections Clause Claim Fails (Count III).

Plaintiff next supposes that Louisiana's nominating-petition requirement imposes a *de facto* additional qualification for the office of United States Senator. Compl. ¶¶ 57–59. The Supreme Court has already deemed that argument "wholly without merit." *Storer v. Brown*, 415 U.S. 724, 746 n.16 (1974). A requirement that a candidate win a primary or "otherwise demonstra[t]e substantial community support" before appearing on the general-election ballot "no more establishes an additional requirement for the office" than any other procedural ballot-access rule. *Id.* And *U.S. Term Limits, Inc. v. Thornton* confirms the distinction: *Storer*'s requirements were constitutional because they "regulated election *procedures*," "did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for ballot position," and "did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process." 514 U.S. 779, 835 (1995). Louisiana's requirement fits that description. It does not render Plaintiff (or anyone else) substantively ineligible to serve in the United States Senate. Count III therefore fails.

**D. The Due Process Claim Fails (Count IV).**

Plaintiff finally repackages his ballot-access challenge as one of procedural due process. Compl. ¶¶ 62–63. But that fails for two independent reasons. First, Plaintiff identifies no cognizable liberty or property interest. *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause"); *accord* ECF No. 13 at 6–7 ("[a] candidate's appearance on a ballot is not a fundamental right"). "Without a cognizable interest in liberty or property, 'there is nothing subject to Due Process protections and [the] inquiry ends.'" *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022) (citation omitted). Second, in all events, *Anderson-Burdick* "provides the appropriate test for procedural due process claims challenging election laws," *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 235 (5th Cir. 2020), and Louisiana law plainly satisfies it, *see supra* Part II.A.

**III. At Minimum, *Purcell* Requires a Stay.**

Even if this case were justiciable and Plaintiff's claims cognizable, *Purcell* would require a stay. Under that principle, "'federal courts ordinarily should not enjoin a state's election laws in the period close to an election,'" and "the Supreme Court 'in turn has often stayed lower federal court injunctions that contravened that principle.'" *Disability Rights La. v. Landry*, No. 24-554, 2024 WL 3566698, at *1 (M.D. La. July 29, 2024) (quoting *Singleton v. E. Baton Rouge Par. Sch. Bd.*, 621 F. Supp. 3d 618, 627 (M.D. La. 2022)). To that end, the threshold question is whether the requested relief arrives "too close to the [challenged] election." *Id.* at *2. If so, then

"the key issue is whether [the plaintiff] has demonstrated the four requirements for overcoming *Purcell*" identified by Justice Kavanaugh and adopted by this Court:

> (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.

*Id.* at *1, *2 (quoting *Singleton*, 621 F. Supp. 3d at 628, and citing *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring)).

Here, as in *Disability Rights Louisiana*, "there's no serious dispute that the [TRO and preliminary-injunction motions] w[ere] filed too close to the" November 3 general election (84 days from now). *Id.* at *2; *see also id.* at *1 (noting that the Supreme Court in *Robinson v. Callais*, 144 S. Ct. 1171 (2024), applied *Purcell* to stay an injunction 174 days before the election). Nor can Plaintiff overcome *Purcell*: The underlying merits clearly favor Defendants. *Supra* Sections I & II. The claimed irreparable harm of "loss of his ability to seek federal office" (PI.Mem.6) is an illusion because Louisiana law *allows* no-party candidates to qualify to run for the office. *See* La. R.S. 18:410.8(A). Plaintiff waited over two years to challenge the underlying law. *See* 2024 La. Sess. Law Serv. 1st Ex. Sess. Act 1 (H.B. 17). And, given that ballots for the November 3 general election must be transmitted overseas in just weeks, 52 U.S.C. § 20302(a)(8)(A), no change could be implemented before the election. At minimum, therefore, the Court should stay this case under *Purcell*.

## CONCLUSION

The Court should dismiss Plaintiff's claims and deny the TRO motion and preliminary injunction motion as moot or, at minimum, stay this case under *Purcell*.

Dated: August 11, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General

/s/ *Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)
Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 421-4088
Facsimile: (225) 326-6795
FairclothZ@ag.louisiana.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing with the Clerk of Court using the CM/ECF system. I further certify that I served a copy of the foregoing on Plaintiff by both placing it in the United States Mail, properly addressed and postage prepaid, to 19215 Highway 167, Dry Prong, Louisiana 71423, and sending it to Plaintiff's email address at chuckforlouisiana@gmail.com.

*/s/ Zachary Faircloth*
Zachary Faircloth